### C. P. FOOTE v. LORAIN AND CLEVELAND RAILWAY CO., ET AL.

1. GENERAL RULE AS TO VALUE OF LAND—APPROPRIATION.

The general rule in appropriation cases is to confine the testimony to the market value of the land in issue, it being, in most cases, the best criterion of its value to the owner, but in getting at the value of the land it is always proper to ascertain the value of the land itself separate and apart from improvements made thereon, and the value that the improvements add to the land, and if there is no market value for the latter, a well for instance, it is proper, as one element of value, to show the cost of the article.

**2. VALUE OF LAND WITH A WELL.**

In determining the value of land on which a well is situated, it is proper to show the nature of the well, its depth, the manner in which it was walled, the supply of water that it affords, and its utility and necessity, not only to the strip taken for a right of way, but to the land as a whole; also, its cost, not as a basis upon which to determine the value of it to the land alone, but as tending to show the value of the land.

**3. RULE OF DETERMINING VALUE OF LAND APPROPRIATED.**

In proceedings to compel appropriation, the owner of land is entitled to the full value of all the land for any purpose for which it might be used, including prospective value, which is certain to be realized. Therefore, evidence that land, by reason of having a lake frontage, and having many trees upon it, and by reason of its location, had large value for allotment and sale in suburban building lots, and was greatly depreciated in value by being cut in two by a railroad, is competent to show the market value of the land taken and damages to the part remaining.

**4. EVIDENCE OF VALUE ADDED BY TREES.**

Evidence of added value to land by reason of fruit trees growing thereon at time possession was taken by a railroad company is competent in ascertaining damages therefor. And while the better form might be to ask witnesses as to such added value, yet the difference between such questions and questions as to the value of the trees, is more in form that real meaning, and exclusion of evidence offered in that way constitutes prejudicial error.

**5. RULE WHERE PROPERTY IS OWNED BY TENANTS IN COMMON.**

Where a railroad company became owner of one-half of land owned by tenants in common, and has put its half and the half belonging to its co-tenant to a permanent use, where the latter cannot sell, or where the railroad company can force him to sell or go into court and compel appropriation, the land of such co-tenant no longer has a market value. Under the circumstances, in a proceeding to compel the railroad company to appropriate, such co-tenant is entitled to one-half the market value of the whole property, to be estimated, under rules stated, as of the time when the railroad company took possession, and including improvements, well, fruit trees, fences, and damages to the balance of the property.

**6. REFUSAL OF EXPERT TESTIMONY NOT CURED.**

A refusal to allow an expert witness to testify to the value of land, both real and prospective, as to the purposes for which it might be used. is prejudicial to the party calling him without her fault, and notwithstanding the cross-examination of the witness was such that the objection to his testimony was no longer available, and other witnesses were allowed to testify to such facts.

**7. TESTIMONY OF EXPERT AS TO LAND VALUES.**

Where a witness is expert not only as to the value of land, but as to the purposes for which it may be used, he may testify as to both and give the intrinsic characteristics of the property that make it of special value.

HEARD ON ERROR.

*Frank Higley*, for plaintiff in error.

*Carr, Tolles & Goff*, for defendant in error.

CALDWELL, J.

The plaintiff in error brought this action to compel the defendant in error to appropriate certain property belonging to her, situated in Cuyahoga county and lying along its right of way between Cleveland and Lorain.

The defendant in error undertook to make a contract of purchase of this property from the brother of the plaintiff in error; and the property being owned by the plaintiff in error and her brother in common, each owning a half interest, she, not being a party to the contract, is not bound by the same.

Foote v. Railway Co.

The defendant in error supposed that it had purchased the entire right to this strip of land on which to lay its railroad track, and went forward and built its track upon the land, and thereafter this action was brought to compel it to appropriate the interest of the plaintiff in error in the property.

On this strip of land there was a well used in connection with the farm of which this strip formed a part. On this strip of land were certain forest trees and fruit trees.

She now complains that there was error in excluding certain testimony which she offered upon the trial of the case. She offered to show by Henry P. Foote, her brother, the cost of the well, he having placed the well on the property; and this question was asked him: "Can you state what that well cost?" To which the defendant objected and the court sustained the objection, and she took an exception, and the statement was made that the witness would swear that the cost of the well was fifty dollars; and the bill of exceptions said that the plaintiff was not at any time during said trial permitted to show the value of said well or the cost of the same.

This raises the question, whether, in a case of this kind, the cost of the well may be introduced as evidence tending to show its value

The general rule in such cases, is to confine the testimony to the market value of the property. But there is no market value of a well aside from the land; nor is there any market value of a well when sold in connection with land. And it is one of those exceptional cases in which the value of the property to its owner must be taken into consideration. In most cases, the market value of the property is the best criterion of its value to the owner, but in some, its value to the owner may greatly exceed the sum that any purchaser would be willing to pay.

We would not intimate that it would be proper to estimate the value of this well entirely separate and apart from the value of the land; but, in getting at the value of the land, it is proper at all times to ascertain the value of the land itself separate and apart from improvements that are made upon it, and the value that the improvements add to the land, and, if there is no market value for such improvements, or no value well established under any rule, then we think it is proper, as one element of the value, to show the cost of the article.

In connection with that, it is proper to show the nature of the well, its depth, the manner in which it was walled, the supply of water that it affords, and its utility and necessity to the land as a whole.

This well may have been essential to this farm, and it being destroyed by the railway company, and being no longer of use to the rest of the land, it may have been necessary to have produced another well to take its place to supply the remaining part of the land, not appropriated, with water for stock and other purposes.

All these elements would enter in in this case to show the value of that well, not only to the strip of land taken by the railway company, but of its value to the parts of the land not taken. And in cases of this kind, the cost may be taken into consideration, with the other facts above stated, to determine its value, although it might be improper for the court to treat such evidence, in its charge to the jury, as of any other value than as tending to show the value of the land; and it would not be proper for the court to treat it as the basis upon which to determine the value of it to the land alone.

It being evidence proper under the circumstances of this case, to show its value, it was error for the court to exclude it, and which error we find was prejudicial.

A witness was called to show the market value of the land taken and the damage to the part of the land remaining, and he had testified to such values. Then he was asked to give his reasons for the difference in the value that he found in this property with the railroad crossing it, and without it. That was objected to, the objection was sustained, and the plaintiff excepted and stated that she expected to to prove in answer to this question that the land by reason of the fact that it had a lake frontage and by having many trees upon it, by reason of its location, had a large value for the purpose of allotment and sale in suburban building lots; that by reason of the land being cut in two by the railroad, that part of the land south of the railroad lost nearly all its value for the purpose of allotment and was now only suitable for pasturing purposes.

And this question was asked, to which an objection was made and sustained and an exception taken: "I will ask you, Mr. Hicks, whether this land having trees upon it, located as it is, is more valuable than if it were near farm land?" And a statement was made of what they expected the witness to answer to the question. This witness was called as an expert on the value of the land in question; and it appears from his evidence that he not only knew the values of land, but knew the location of this land and all its surroundings, and all of the uses to which it might be put.

The plaintiff was entitled to the full value of her land for any purpose for which it might be used, even if that was a prospective value, but certain to be realized. But it is claimed that when the witness answered as to the values, the witness that the plaintiff produced, the witness could go no farther, and, in attempting to ask the questions that were rejected, the plaintiff was seeking to cross-examine her own witness and the court might at its discretion refuse the testimony.

Where a witness is an expert not only as to the value of land, but as to the purposes for which it may be used, he may be questioned as to both and he may give any intrinsic characteristics of the property that make it of special value, in chief; and the witness should have been allowed to answer the questions, and it was error to refuse, and was prejudicial.

It is claimed that this was afterward cured, from the fact that other witnesses were allowed to testify as to the purposes for which said land could be used. Nevertheless, it is true that the plaintiff was deprived of the opinion of Hicks upon that question, for whatever it might be worth; and although the cross-examination of Hicks was such that the objection to his testimony would no longer be available, yet we think, under all the circumstances, it was prejudicial to the plaintiff; it prejudiced without her fault.

It is claimed the court erred in refusing testimony as to the value of trees that stood upon the land at the time the railway company took possession of the same. Stone was the witness, and he was asked if he knew the value of the land as it was at the time of the assessing of the damages, and he said he knew its value to be $500 an acre; and he testified that he knew of the trees that were upon this land at the time it was taken by the railroad company; and he was asked the value of the fruit trees upon the land taken by the railroad company at the time the land

was taken. That was objected to and exception taken and then it was it was stated what was expected to be proven, that the witness's testimony would show that the fruit trees were worth $300.

It is difficult to say that there is any market value for trees standing upon land, separate and apart from the land itself. And the intent and purpose of this question was not to ask the witness what the value of the trees were, separate and apart from the land; but the real meaning of the question is, "What would they add to the value of the land for the purposes for which the land was used before its occupation by the railroad company?"

Perhaps the better way to get at that is to ask what the land was worth at the time of the trial, supposing the trees to be upon it as they were at the time that occupation was taken, taking into consideration the natural decay and destruction of such trees. But the difference between the question asked and the one suggested is more in form than in real meaning, for the trees severed from the land are worth nothing as trees, only worth what they would bring for such purposes as they may be used for, such as wood or timber or any other purpose to which they were adapted when severed from the land. And we think that either form of question fairly proposes to the jury, " How much did they add to the value of the land as they stood at the time possession was taken;" and we think the question should have been answered and that it was prejudicial to exclude.

This question was under consideration during the production of testimony, and also by the court in presenting the case to the jury: " Whether the plaintiff was entitled to one-half of the market value of the entire land, supposing it to have been owned by one person; or whether she was entitled to only what her half was worth, taking into consideration that whoever bought it would have to be to some trouble by way of partition or some other process by which the land could be severed and divided."

Unquestionably, land owned in common where one tenant in common wishes to sell, will not bring as much in the market as where the entire property is being sold. Any one in purchasing an interest in land, takes into consideration what must be done in the courts or otherwise to, partition the land and get the ownerships of it severed, instead of in common.

But this case, we think, is peculiar in its facts. While she owned this land in common with her brother, the value of her half was one-half the value of the whole less what any purchaser would have considered proper to get the land divided between the owners.

But in this case, the railroad company becomes the owner of one-half, the half belonging to her brother; and it has put its half, and hers to a *permanent* use, where she cannot sell and where the railway company can force her to either sell out her half to it, or go into the courts and compel it to appropriate her half. Under such circumstances, her half no longer has a market value, for she cannot sell it. She can make only one disposition of it and that is, to transfer it to the railway company. And the railway company having placed her in this situation, we think the amount that she is entitled to, is one-half of the market value of the whole strip, that market value to be estimated at the time of the assessment of damages, taking into consideration the improvements that were upon it at the time the railway company took possession, which would be the well, the fruit trees, the forest trees, the fences, etc.

44 O. C. D. Vol. 11

Had the railway company appropriated this entire land, that would be the value that she would be entitled to, and her brother would have been entitled to the other half at the same time ; and if this rule is not still to prevail, then the railway company can purchase one small fraction of a strip of land over which it desires to put its railroad, and then it can compel the other owners of the land to sell at a sacrifice simply because the railway company will not sell, nor can the others sell if the railway company has taken possession, to any other than the company.

Under these peculiar facts, we believe the more equitable rule is that she should be entitled to recover one-half of the actual value of the entire strip, including damages to any other portion of her land ; and in estimating such values, the well and the trees that were upon it when possession were taken, should be taken into consideration.

For the errors herein named, we reverse the judgment in this case ; the grounds of reversal being error on the part of the court in the rejection of testimony offered by the plaintiff, and in instructions to the jury.